IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAMES V. CORNELIUS, JR., | ) |
| | ) CASE NO. 1:05 CV 545 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) MAGISTRATE JUDGE VECCHIARELLI |
| REGINALD WILKINSON, *et al.*, | ) |
| | ) |
| | ) |
| Defendants. | ) **MEMORANDUM OF OPINION** |

On July 8, 2005, Defendants Dr. Dong Sung Chung and Arevenise Melton (collectively "Defendants") filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Civil Rules of Civil Procedure. (Doc. No. 21.) Defendants allege that Plaintiff's complaint is barred by the applicable statute of limitations. For the reasons set forth in detail below, Defendants' motion to dismiss (Doc. No. 21) is DENIED in part. Plaintiff's claim regarding his stay at the infirmary housing on October 9 and 10, 2002 is dismissed.

**I. Factual and Procedural Background**

On October 4, 2002, Plaintiff James V. Cornelius, an inmate at the Mansfield Correctional Institution, injured his left hip while working at his prison employment. (Doc. No. 1, Complaint, p. 16.) Plaintiff reported to the infirmary and consulted with Defendant Dr. Dong Sung Chung. (*Id.* at 17.) Dr. Chung ordered x-rays to be taken of Plaintiff's left hip. (*Id.*) After viewing the x-ray, Dr. Chung diagnosed Plaintiff's injury as a sprained muscle and prescribed muscle relaxers. (*Id.*)

On October 7, 2002, Plaintiff experienced increased pain and went to the infirmary. (*Id.* at 19.) The nurse gave him a "lay-in" pass that permitted Plaintiff to stay in his cell that day, and scheduled him to see Dr. Chung the following day. (*Id.*) On October 8, 2002, Plaintiff consulted with Dr. Chung, who reiterated to Plaintiff that he had a sprained muscle and changed his medication. (*Id.* at 20.) Later that day, Plaintiff felt his hip "pop" and could not move his left leg or place his body weight on it. (*Id.*)

On October 9, 2002, Plaintiff was taken by medical cart to the infirmary and complained to Dr. Chung that he lost ability to walk on his left leg. Dr. Chung did not take a new x-ray or give Plaintiff a physical examination. Although Dr. Chung again told Plaintiff that he had a sprained muscle which at times could feel like a dislocated hip, he admitted Plaintiff to infirmary housing. (*Id.* at 22.) Plaintiff claims that he was not given a pillow and his bed in the infirmary cell was a piece of sheet metal with a mattress only one inch thick. (*Id.* at 23.) Plaintiff also claims that the cell had no handicap rails to assist him in walking to the sink and toilet, which were on the opposite side of the cell. He also claims that the food was served cold and in insufficient quantity. (*Id.*) Plaintiff asserts that he was in great discomfort in the cell. On October 10, 2002, Plaintiff asked Dr. Chung to issue him crutches and discharge him to

the general prison population. Dr. Chung did so. (Complaint, p. 24.)

On October 17, 2002, Plaintiff saw Dr. Chung and expressed his continuing pain and concerns about having a dislocated hip. (*Id.* at 24-25.) Dr. Chung again told Plaintiff that he had a sprained muscle. (*Id.* at 25.)

On December 11, 2002, Plaintiff sent Informal Complaint Resolution ("ICR") to Defendant Arvenise Melton ("Melton"), the Healthcare Administrator at MCI, outlining his injury, the visits to Dr. Chung and his ongoing problem of obtaining adequate medical care. (*Id.* at 27.) In the ICR, Plaintiff also requested to be examined by the death row physician for a second opinion. (*Id.*) Plaintiff claims that he did not receive a response.

On December 18, 2002, Plaintiff asked a nurse for an appointment with the death row physician. The nurse informed Plaintiff that he would need approval from both Melton and Dr. Chung to see another physician; Plaintiff did not see the death row physician. (*Id.* at 27-28.) Also on this date, Plaintiff sent a "kite" to the Institution Inspector at MCI, Pricilla Rowe, and requested a notification of grievance form ("NOG"). Plaintiff claims that he did not receive a response. (*Id.* at 28.)

On December 31, 2002, Plaintiff filed a complaint with the Ohio State Medical Board outlining the alleged inadequate medical treatment he received at MCI. Plaintiff also sent a letter of complaint to the Medical Director of the Department of Rehabilitation and Corrections ("DRC"), Dr. Bruce Martin. On January 21, 2003, the State Medical Board responded that it was referring his complaint to Dr. Martin. (*Id.* at 29.) On January 29, 2003, the DRC indicated it had conducted an investigation and found that Plaintiff received adequate medical care from Dr. Chung. (*Id.*)

On February 6, 2003, Rowe informed Plaintiff that Dr. Chung was no longer at MCI and he

should sign up for sick call to see the new physician. (Complaint, p. 30.) Plaintiff did so and was placed on a waiting list. He did not see the new physician until February 27, 2003. After a physical examination and x-rays of Plaintiff's hip, the new physician ordered Plaintiff to be taken to Ohio State University Hospital ("OSUH") for possible emergency surgery because his left hip had "snapped in two" (*Id.* at 35.)

On March 6, 2003, a physician from OSUH took an x-ray of Plaintiff's left hip. On April 8, 2003, upon the recommendation of an orthopedic specialist, Plaintiff underwent total hip replacement surgery. (*Id.* at 41- 44.)

On March 23, 2003, Plaintiff sent Melton another ICR outlining the inadequate conditions of confinement in the infirmary housing. On July 4, 2003, Plaintiff then filed a grievance with the Institution Inspector at MCI, Pricilla Rowe, against Melton regarding the conditions at the infirmary. On July 18, 2003, Rowe denied Plaintiff's grievance. On July 26, 2003, Plaintiff appealed this decision to the chief inspector. On September 11, 2003, the chief inspector affirmed Rowe's decision.

On December 30, 2003, Plaintiff filed a grievance with the Institutional Inspector against Dr. Chung. On January 15, 2004, the inspector denied Plaintiff's grievance as untimely. On January 19, 2004, Plaintiff appealed to the Chief Inspector. On July 17, 2004, the Chief Inspector affirmed the Institution Inspector's decision. On August 5, 2004, the Chief Inspector issued a supplemental decision affirming the Institution Inspector's decision.

On February 9, 2005, Plaintiff filed the instant action under 42 U.S.C. § 1983 against many parties for alleged Eighth Amendment violations. On April 18, 2005, the District Court, dismissed all but two parties, Defendants Dr. Chung and Melton. This case proceeds against Dr. Chung and Melton

4

for the alleged Eighth Amendment claims for deliberate indifference to serious medical needs, and also against Melton for the conditions in the infirmary housing.[1]  Defendants now seek to dismiss the case based on Plaintiff's failure to file the instant complaint within the applicable statute of limitations.  This case is before this Court pursuant to the parties' consent.

## II.  Standard

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  All well-pleaded allegations must be taken as true and construed most favorably toward the non-movant.  *See Mayer v. Mylod,* 988 F.2d 635, 637 (6th Cir. 1993).  While a court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *see Lawler v. Marshall,* 898 F.2d 1196, 1199 (6th Cir. 1990), the court "need not accept as true legal conclusions or unwarranted factual inferences."  *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987).  Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

A district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Where subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction.  *GTE North v. Strand*, 209 F.3d 909, 915 (6th Cir.

---

[1] The District Court dismissed Plaintiff's claim against Melton for her alleged failure to respond to his grievances.

2000). Specifically, the plaintiff must show that the complaint contains "either direct or indirect allegations respecting all material elements to sustain a recovery under some viable legal theory." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993). That is to say, the plaintiff will survive the motion to dismiss by showing "any arguable basis in law" for the claims set forth in the complaint. *Strand,* 209 F.3d at 915. Moreover, when subject matter jurisdiction is challenged, a court is empowered to resolve factual disputes. *Rogers v. Stratton Indus.*, *Inc*., 798 F.2d 913, 915 (6th Cir. 1986).

### III. Analysis - Statute of Limitations

Defendants claim that Plaintiff's complaint must be dismissed as a matter of law because Plaintiff did not file his complaint within the applicable limitations period.

The period of limitations in § 1983 suits is to be determined by reference to the appropriate state statute of limitations and the coordinate tolling rules. *Hardin v. Straub*, 490 U.S. 536, 539 (1989). In Ohio, the statute of limitations for § 1983 claims is two years. *See Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (The appropriate statute of limitations for 1983 civil rights actions arising in Ohio is contained in Ohio Revised Code 2305.10, which requires that actions for bodily injury be filed within two years after their accrual.).

This two year period begins to run from the time the plaintiff knows or has reason to know of his injury which is the basis of his action. *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984).[2] A plaintiff has reason to know of his injury when he should have discovered it through the exercise of

---

[2] Although state law provides the limitations period for § 1983 claims, federal law determines when such period begins to run. *Sevier*, 742 F.2d at 272.

reasonable diligence. *Id.* at 273. This is identified by an event which "should have alerted the typical lay person to protect his or her rights." *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991). When a person knew or should have known of his injury is generally a question of fact and should be determined case by case. *See Herm v. Stafford*, 663 F.2d 669, 682 (6th Cir. 1981).

However, the statute of limitations in a § 1983 action is tolled while the plaintiff exhausts his state administrative remedies. *See Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000). Under Ohio law, there is a three-step grievance procedure for inmates. First, an inmate initiates the grievance procedure by filing an Informal Complaint Resolution with the prison official whose area of responsibility is most related to the grievance. Ohio Admin. Code 5120-9-31(J)(1). If the inmate is dissatisfied with the response or there is no response, the inmate may file a grievance with the Institutional Inspector. *Id.* at (J)(2). If the grievance is denied, the inmate may file an appeal with the Chief Inspector. *Id.* at (J)(3). The Chief Inspector's response is the final decision.

**A. Claim of Deliberate Indifference to Medical Needs**

Defendants claims that the limitations period commenced on October 4, 2002, the date that Plaintiff injured his hip and had his initial consultation with Dr. Chung. Under this reasoning, Plaintiff would have until October 4, 2004 in which to file the complaint; he did not do so until February 9, 2005. On the other hand, Plaintiff claims that the limitations period did not begin until February 27, 2003, the date on which Plaintiff learned his hip was fractured. This Court finds that, with regard to the deliberate indifference claim, neither of these dates mark the beginning of the limitations period.

Although Plaintiff was aware that he initially injured his hip on October 4, 2002, his consultation with Dr. Chung on that date does not support an Eighth Amendment claim based on a deliberate

indifference to medical needs.[3] At this consultation, Dr. Chung ordered an x-ray of Plaintiff's hip and diagnosed Plaintiff with a sprained muscle. Plaintiff had no reason to challenge this treatment or diagnosis on this date. However, the basis of Plaintiff's claim arose before February 27, 2003, the date on which he was diagnosed with a fractured hip. *See Kullman v. Owens-Corning Fiberglas Corp.*, 943 F.2d 613, 616 (1991) (Cause of action arose when the plaintiff knew or should have known that he was suffering lung difficulty and worked in the presence of asbestos, not when he later received official diagnosis of asbestos-exposure); *see also Hawkins v. Spitters*, 79 Fed. Appx. 168 (6th Cir. 2003) (unpublished). In *Hawkins*, the plaintiff made several unsuccessful requests to the correctional facility staff between November 1996 and January 1997 to be referred to a sleep apnea expert to determine the cause of his inability to sleep. The plaintiff in *Hawkins* was diagnosed with sleep apnea in December 2000. The court in *Hawkins* found that the plaintiff's cause of action accrued on January 31, 1997, the date that the defendants denied his grievance challenging the denial of his request for a sleep apnea evaluation.[4]

In the instant action, although Dr. Chung ordered and reviewed an x-ray of Plaintiff's hip on October 4, 2002, Plaintiff claims that on October 7 he felt his leg "pop" and could not place any weight on it. Further, Plaintiff asserts that the pain continued to increase. Although Plaintiff expressed these

---

[3] In order to establish a deliberate indifference to medical needs claim in violation of the Eighth Amendment, a prisoner must demonstrate that the defendant acted, or failed to act, with deliberate indifference to serious medical needs. Deliberate indifference is the reckless disregard of a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

[4] The Ohio three step grievance procedure was inapplicable in *Hawkins*, as Michigan law applied.

concerns to Dr. Chung on four different occasions since the initial consultation, Dr. Chung did not order another x-ray or perform a physical examination on Plaintiff. Then, on December 11, 2002, Plaintiff sent an Informal Complaint Resolution ("ICR") to Melton outlining his alleged inadequate medical care from Dr. Chung. In accordance with the reasoning in *Hawkins*, Plaintiff's cause of action arose on the date Melton's response to Plaintiff's ICR was due, or December 18, 2002. *See* Ohio Admin. Code 5120-9-31(J)(1) (The staff member shall respond within seven calendar days of receiving the grievance.). The Court will toll the time during the limitations period for which Plaintiff continued the second and third steps of the grievance procedure.[5]

**Tolling**

The limitations period ran for 377 days, or from December 18, 2002 to December 30, 2003, the date on Plaintiff which filed a grievance with the Institutional Inspector against Dr. Chung, *i.e.*, the second step of the grievance procedure. On January 15, 2004, the inspector denied Plaintiff's grievance as untimely. On January 19, 2004, Plaintiff appealed to the Chief Inspector, *i.e.*, the third and final step of the grievance procedure. On July 17, 2004, the Chief Inspector affirmed the Institution Inspector's decision; however, On August 5, 2004, the Chief Inspector issued a supplemental decision affirming the Institution Inspector's decision due to an error in the first decision.

---

[5] It would be unreasonable to toll the limitations period between the grievance procedure steps, *i.e.*, the time when there is no pending grievance or appeal. If this were done, an inmate could wait years before pursuing the third step of a grievance and the statute of limitations would serve no purpose because procedural default does not apply to the mandatory administrative exhaustion for § 1983 claims. *See Thomas v. Woolum*, 337 F.3d 720, 732 (6th Cir. 2003).

9

The limitations period continued to run for another 188 days, or from August 6, 2004 until Plaintiff filed his complaint on February 9, 2005. As only 565 days (377 days + 188 days) of the limitations period expired before Plaintiff filed his complaint, his claim for the deliberate indifference to medical care is timely.

**B. Conditions of Confinement at the Infirmary Housing**

Defendants argue that October 4, 2002 is the date on which the limitations period commenced regarding Plaintiff's claim for inadequate conditions at the infirmary housing. Plaintiff claims that the condition of the infirmary housing is a continuing violation and the limitations period did not commence until April 22, 2003, the date on which Plaintiff last stayed in the infirmary housing.[6]

Defendant's assertion that October 4, 2002 is the date the limitations period began has no merit because Plaintiff was not subjected to the infirmary housing until October 9, 2002. Plaintiff stayed in the infirmary housing on October 9 and 10, 2002, March 10 and 11, 2003, and April 21 and 22, 2003. Plaintiff asserts that the conditions were inadequate on each of these occasions to accommodate his continuing hip injury.

The Court finds that Plaintiff has a separate cause of action for each stay at the infirmary

---

[6] Defendants do not address Plaintiff's continuing violation argument. Although this Court is not aware of any precedent in this circuit addressing continuing violations in an Eighth Amendment context, there is Seventh Circuit case law defining a continuing violation in this context. In *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001), the court stated that a plaintiff can include the beginning of a violation even if that beginning lies outside of the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct. The Court will use this definition for guidance in addressing Plaintiff's claim.

10

housing. The continuing violations doctrine is inapplicable. Although the conditions in the infirmary may have remained the same from October to April, Plaintiff was only subjected to such conditions on three separate and discrete occasions for two days each stay over a period of seven months. It would not be unfair for Plaintiff to bring three separate claims for each incident, as each one is separate and identifiable. For this reason, the limitations period runs separately for the three separate occasions. Accordingly, as Plaintiff filed the instant complaint on February 9, 2005. Plaintiff's claim regarding his stay at the infirmary housing on October 9 and 10, 2002 is time-barred and is dismissed; Plaintiff's claim regarding his stays on March 10 and 11, 2003 and April 21 and 22, 2003 are timely and are not dismissed. *See Heard*, 253 F.3d at 319.

### IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss (Doc. No. 21) is DENIED in part. Plaintiff's claim regarding his stay at the infirmary housing on October 9 and 10, 2002 is dismissed.

IT IS SO ORDERED.

s/ Nancy A. Vecchiarelli
U.S. Magistrate Judge

Date: October 5, 2005