**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JAMES V. CORNELIUS, ) | CASE NO. 1:05-cv-00545 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE VECCHIARELLI |
| ) | |
| REGINALD WILKINSON, *et al.*, ) | |
| ) | |
| Respondent. ) | **MEMORANDUM OF OPINION** |

On February 9, 2005, plaintiff James V. Cornelius ("Plaintiff"), *pro se*, filed the above-captioned action under 42 U.S.C. § 1983 against numerous defendants, including former Mansfield Correctional Institution ("ManCI") physician Dong Sung Chung and ManCI Health Care Administrator Arevenise Melton. In the complaint, Plaintiff alleges he was denied proper medical care and was subjected to harsh conditions of confinement during his treatment.

Defendants filed a motion to dismiss. Judge Nugent dismissed all claims against all defendants, except Defendants Chung and Melton. The remaining claims following Judge Nugent's Order were against Defendant Chung for deliberate indifference to his serious medical needs and Defendant Melton for conditions in the infirmary, which allegedly violated the Eighth Amendment.

On November 11, 2005 , the parties consented to the full jurisdiction of the Magistrate Judge. (Doc. No. 40.)   On April 13, 2006, Defendants Chung and Melton filed a motion for summary judgment.  (Doc. No. 52.)  For the reasons stated below, summary judgment is GRANTED in defendants' favor.

## I.  STATEMENT OF FACTS

Plaintiff was formerly incarcerated at Mansfield Correctional Institution ("ManCI").   On October 4, 2002, Plaintiff was incarcerated at ManCI and was working in the Ohio Penal Industries section of the institution.  While performing his job, Plaintiff slipped on a wool glove lying on the floor.  To prevent from falling, Plaintiff caught himself with the bucket on the jack that he was in the process of moving and twisted his hip.  (Plaintiff Depo. at 32,18-20.)

On that same day, Plaintiff went to the infirmary and was examined by Defendant Chung. Defendant Chung reported that Plaintiff was experiencing hip joint pain from twisting his hip five days prior.  (Defendant Ex. C.)  Defendant Chung ordered an x-ray of Plaintiff's left hip. Jeff Mandeville was the radiographer that x-rayed Plaintiff.  (Defendant Ex. A.)  Mandeville saw no fracture in these x-rays.  (*Id*.)  Mandeville sent the x-rays to the Corrections Medical Center radiologist, who reported that the x-rays were negative.  (*Id*.; Defendant Ex. B.)  In Plaintiff's medical records, Defendant Chung reported that the x-rays were negative and prescribed Flexeril.  (Defendant Ex. C.)

Three days later, on October 7, 2002, Plaintiff returned to the infirmary, complaining that he was still in pain.  (Defendant Ex. D.)  At that time, Plaintiff had a limp and difficultly standing.  (*Id*.)  A corrections officer, Joanne S. Downe, who was assigned to the front desk of the infirmary, overheard a nurse tell Plaintiff that he would not be able to see a doctor on that

2

day because Plaintiff did not have a doctors' sick call pass. (Plaintiff Ex. 4.) Plaintiff was issued a two day medical "lay-in" and was referred to a doctor for follow up. (*Id.*; Defendant Ex. D.)

The following day, October 8, 2002, Dr. Chung re-examined Plaintiff. Plaintiff reported that his hip was still painful and that he had limited range of movement. (Defendant Ex. D.) Defendant Chung prescribed Naprosyn and ordered Plaintiff off work for two weeks. (*Id.*)

The next day, October 9, 2002, Plaintiff returned to the infirmary in an infirmary cart (known as the "Red Baron"), where he reported to a nurse that his hip "went out" the previous evening and that he was unable to walk or bear weight on the hip. (Defendant's Ex. E.) The nurse referred Plaintiff to Defendant Chung. (*Id.*) Defendant Chung noted that Plaintiff was experiencing marked pain and muscle spasms. (Defendant Ex. D.) Dr. Chung admitted Plaintiff to the infirmary for bed rest and prescribed Motrin 800mg. (*Id.*)

A nurse checked on Plaintiff on eight separate occasions on that day. (*Id.*) That afternoon, the nurse discovered Plaintiff sitting on the side of his bunk leaning back to the right side, rubbing his left hip. Plaintiff stated to her that "I'm trying to rub it out." (*Id.*)

The next day, October 10, 2002, Plaintiff requested crutches. (*Id.*) Defendant Chung fulfilled the request, discharged Plaintiff from the infirmary, and told Plaintiff to follow up in one week. (Defendant Ex. G.)

One week later, on October 17, 2002, Defendant Chung followed up with Plaintiff. (Defendant Ex. H.) Defendant Chung reported that Plaintiff still suffered from muscle spasms. (*Id.*) Defendant Chung order use of crutches for another week. (*Id.*) According to Plaintiff's medical records and his own complaint, Plaintiff did not seek any additional medical treatment

from the prison infirmary until December 18, 2002 and never saw Defendant Chung again for medical treatment.

On December 18, 2002, Plaintiff saw a ManCI nurse and reported hip and back pain, as well as muscle spasms. (*Id*.) The nurse gave him Tylenol and told him to alternate Tylenol and Motrin to reduce stomach problems. (*Id*.) In his complaint, Plaintiff claims he requested to see the death row doctor, but was denied.

On February 11, 2003, Plaintiff again complained to the nurse that he was in constant and extreme pain. (Defendant Ex. H.) The nurse told Plaintiff to continue to use crutches and placed him on the doctor's sick call list for follow up. (*Id*.)

On February 27, 2003, a prison doctor, Dr. Turkson, examined Plaintiff. (Defendant Ex. I.) Turkson noted that Plaintiff reported dislocating his hip "some 5 weeks ago" and reduced the dislocation himself. (*Id*.) Plaintiff reported pain and was unable to bear weight on his left leg. (Id.) Turkson ordered x-rays of Plaitniff's hip. (*Id*.) The x-rays showed that Plaintiff experienced "an impacted slightly angulated intertochanteric fracture of the left femur." (Defendant Ex. J.; *see also*, Defendant Ex. K.) Turkson arranged for Plaintiff to be sent to the Ohio State University Medical Center. (Defendant Ex. K.) Turkson opines that on the date of the injury, Plaintiff would have been in considerable pain, which leads Turkson to the conclusion that the fracture occurred close to February 27, 2003. (*Id*.) Turkson states that this conclusion is supported by the fact that the original x-ray showed no fracture. (*Id*.) Turkson hypothesizes that, "It is possible that the fracture occurred later, when he tried to reduce the dislocation himself." (*Id*.)

Thereafter, Plaintiff had surgery for hip replacement. (Plaintiff Ex. 27.)

4

On three occasions, Plaintiff spent a night in an infirmary cell:  (1) October 9, 2002, when Defendant Chung ordered bed rest; (2) March 10, 2003, after Plaintiff returned from an outside medical facility; and (3) April 21, 2003, following his surgery.  (Defendant Ex. M.)  In each of these instances, Plaintiff was housed in the cell for less than 24 hours.  (Defendant Exs. D, I, M; Plaintiff Depo. at 3-5.)  Plaintiff filed a grievance complaining about infirmary cell conditions. (Defendant Ex. M.)  Specifically, Plaintiff asserted

> As it stands now, and in the past, inmates are placed within a 'stripped down cell,' similar to a 'disciplinary cell. . . .'  The cell has a 'push button sink and toilet,' and a solid 'sheet metal bunk' bed, that is extremely uncomfortable to attempt sitting on for any length of time much less attempting to sleep upon.  These cells are also not equipped with 'rails' or any other type of 'handicap assistance' devices . . . .  The food is usually served cold, and in insufficient quantities, and basic hygiene materials are not allowed to be brought by the individual inmate . . . and these basic hygiene items are not provided by the staff of the infirmary.

(*Id*.)

The Inspector of Institutional Services responded to the grievance, stating:

> The Infirmary cells are intended for short term stays for inmates in need of medical care around the clock.  The cells are stark for good reason.  Sanitation is easier to maintain if there is minimum amount of things in the cell.  Push buttons on the facilities are most practical.  Mattresses are replaced as money and need allows.  As you stated, the staff did give you another mattress when you brought it to their attention.  A lot of property in the cell could get in the way of emergency medical care if medical staff need to get in the cell to assist in a hurry.  Also, most inmate[s] who need this type of care are not really of the mind to do anything but rest and heal.  Spring mattresses could cause difficulties for some.  Inmates who have balance problems may find the unsteadiness of the spring bed to be a problem.  A hard, stable surface is best for this reason, as well as security[] reasons I won't go into here.  Permanent handicap devices are not in the cells.  Wheelchairs, walkers and crutches are available if you request them and medical staff deem they are needed.  You do not indicate that you asked and were denied any of these.  Hygien[]e materials are available and issued as needed.

(Defendant Ex. N.)

Plaintiff now alleges that both Defendant Chung and Defendant Melton violated his constitutional rights under the Eighth Amendment.  Defendants, in turn, have filed a motion for summary judgment.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the governing substantive law, might affect the outcome of the action.  *Anderson*, 477 U.S. at 248.  All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

Once the moving party has made [a showing that there is no genuine issue of material fact], the nonmoving party cannot rest on its pleadings, but must identify specific facts that can be established by admissible evidence that demonstrate a genuine issue for trial." *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir.2003).  Conclusory allegations are not sufficient to defeat a properly supported summary judgment motion.  *McDonald v. Union Camp Corp*., 898 F.2d 1155, 1162 (6th Cir.1990) (citing *Patterson v. General Motors Corp* ., 631 F.2d 476, 482 (7th Cir.1980).

The Court's function is not to weigh the evidence and determine the truth of the matters asserted but to determine if there is a genuine issue of material fact for trial.  *Anderson*, 477 U.S. at 249.   The Court is not duty bound to search the entire record in an effort to establish a lack of

genuinely disputed material facts. *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992); *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989); *Superior Roll Forming Co. v. Interroyal Corp.*, 494 U.S. 1091 (1990). Rather, the burden is on the nonmoving party "to present affirmative evidence to defeat a properly supported motion for summary judgment," *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir.1989), and to designate specific facts in dispute. *Anderson*, 477 U.S. at 250; *Guarino*, 980 F.2d at 404-05.

### III.  ANALYSIS

**A.  Claims against Defendant Chung**

Plaintiff alleges that Defenant Chung violated the Eighth Amendment by acting with deliberate indifference to Plaintiff's serious medical needs

In order to establish an inadequate medical care claim in violation of the Eighth Amendment, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835(1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Deliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence will not suffice. *Farmer*, 511 U.S. at 835-36.

Consequently, allegations of medical malpractice or negligent diagnosis and treatment fail to state an Eighth Amendment claim of cruel and unusual punishment. *Estelle*, 429 U.S. at 106. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). "[W]hen a prison doctor provides treatment, albeit carelessly

or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not arise to the level of a constitutional violation." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).  To carry his burden of proof at trial, a prisoner must show that the prescribed treatment was "so woefully inadequate as to amount to no treatment at all." *Id.*   Whether medical treatment constitutes deliberate indifference to serious medical needs is a mixed issue of law and fact. *Williams*, 186 F.3d at 690.

In the instant action, Plaintiff has failed to show Defendant Chung acted with deliberate indifference with regard to Plaintiff's serious medical needs.  The record reflects that Defendant Chung saw Plaintiff on the day of his accident.  On that day, Defendant Chung x-rayed Plaintiff's hip, found no evidence of fracture, and prescribed Flexeril.  In subsequent visits, Defendant Chung ordered Plaintiff off work, admitted Plaintiff to the infirmary for bed rest, prescribed Naprosyn and Motrin, and provided Plaintiff with crutches.

Plaintiff alleges that Defendant Chung never physically examined him at the initial visit or any visit thereafter.  However, Plaintiff provides no evidence of this alleged fact in the form of an affidavit or otherwise and merely rests on his pleadings.

Assuming *arguendo* that such evidence exists, Plaintiff does not argue that he was completely denied medical treatment, but rather that Defendant Chung failed to make a proper diagnosis and prescribe the proper treatment.  This Court is reluctant to second guess Defendant Chung's judgment, particularly when the only admissible evidence in the record does not indicate that Plaintiff was misdiagnosed.  Not only did Defendant Chung view Plaintiff's x-ray to determine that no hip fracture existed at the time of Plaintiff's first visit, but this diagnosis was confirmed by a radiographer and radiologist.  Moreover, the doctor that diagnosed Plaintiff with

8

a hip fracture concluded that Plaintiff's fracture occurred close to February 27, 2003 – four months after Plaintiff's last visit with Defendant Chung.

Plaintiff submits several medical articles in an attempt to demonstrate that he had a hip fracture during his visits with Defendant Chung. However these documents are not authenticated and constitute hearsay. Although Federal Rule of Evidence 803(18) provides a hearsay exception for "learned treatises," such documents are only admissible "[t]o the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination." Plaintiff fails to present these medical articles in conjunction with expert testimony. As such, these documents are inadmissible and may not support Plaintiff's allegations that he was misdiagnosed.

Plaintiff also presents numerous declarations from prisoners and prison employees who testify that, as laymen, they could see that Plaintiff was in need of medical attention and experiencing severe pain. This Court, and it appears that Defendants, do not doubt that Plaintiff experienced severe pain as a result of his injuries. However, the issue is not whether Plaintiff experienced a serious medical injury, but rather if Defendant Chung acted with deliberate indifference. The evidence in the record fails to indicate that Defendant Chung acted with such indifference. Accordingly, summary judgment is granted in his favor.

**B.     Claims Against Defendant Melton**

Plaintiff asserts that Defendant Melton is responsible for conditions of confinement that Plaintiff experienced in the three nights he spent in an infirmary cell and that these conditions violated the Eighth Amendment.

In his complaint, Plaintiff asserts that his time spent in an infirmary cell was "very

uncomfortable, cold, and relatively sleepless." Plaintiff cites the following in support of his contention: he was given only a jumpsuit to wear; his bedding consisted only of two sheets, two blankets, and a pillow case; his toiletries consisted of bar of soap and a roll of toilet paper; his "stripped down cell" consisted of a push button sink and toilet, a low solid metal bunk with a thin, worn mattress (which he admits was replaced when requested); the cell lacked walking aides such as handicapped rails; and for lunch and dinner on October 9th and breakfast on October 10th, he was served cold food "sloshed" together in insufficient quantities on a Styrofoam tray.

The Eighth Amendment prohibits conditions of confinement that involve the wanton and unnecessary infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981). "But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. The Amendment prohibits, therefore, only those conditions that deny the "minimal civilized measure of life's necessities." *Id.* at 347; *Hadix v. Johnson*, 367 F.3d 513 (6th Cir .2004). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348. Moreover, "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (*per curiam*)

The length of time that an inmate is subjected to certain conditions of confinement is relevant in determining whether the confinement meets constitutional standards. *Hutto v.*

10

*Finney*, 437 U.S. 678, 686-87 (1978) ("A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months."); *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir.1982) ("allegations of two days of discomfort are not sufficient to state a claim of constitutional dimension").

Given the length of time the Plaintiff was exposed to the conditions alleged in his complaint, he has failed to state a claim which would entitle him to relief under § 1983. *See Dellis v. Corr. Corps. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (Eighth Amendment claim not stated when prisoner deprived of lower bunk, subjected to flooded cell, and deprived of working toilet because prisoner alleged only temporary inconveniences and did not demonstrate that conditions fell beneath minimal civilized measure of life's necessities); *Brodak v. Nichols*, 162 F.3d 1161, 1998 WL 553032, *1 (6th Cir. Aug.17, 1998) (inmate who allegedly slept on the floor and was exposed to overcrowded conditions for 45 days was not deprived of the minimum civilized measure of life's necessities); *Myrick v. Buchanan*, 929 F.2d 701, 1991 WL 43926, *1 (6th Cir. Apr.11, 1991) (inmate's alleged exposure to various unconstitutional jail conditions for 18 days, while unpleasant, did not amount to cruel and unusual punishment). *Johnson v. Pelker*, 891 F.2d 136, 138-39 (7th Cir.1989) (being required to sleep on cold, hard metal surface for two days does not amount to an Eighth Amendment violation). In the instant action, Plaintiff was subjected to the alleged unconstitutional conditions on only three occasions - each time less than 24 hours. In light of the temporary nature of these conditions of confinement, Plaintiff has failed to state a Eighth Amendment claim. As such, Defendant Melton is granted summary judgment in her favor.

### IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED.

s/ <i>Nancy A. Vecchiarelli</i>
NANCY A. VECCHIARELLI
U.S. MAGISTRATE JUDGE

Date:  August 18, 2006